UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONNIE J. KNIGHT,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

**DECISION AND ORDER**
14-CV-1037S
10-CR-144S

## I. INTRODUCTION

Presently before this Court is the Motion of *pro se* Petitioner Ronnie J. Knight to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. For the reasons discussed below, Petitioner's § 2255 motion is denied.

## II. BACKGROUND

On September 20, 2010, Petitioner appeared before this Court and pled guilty to a one count Superseding Information, charging a violation of Title 21, United States Code, Section 846 (conspiracy to manufacture, to possess with intent to distribute, and to distribute, a mixture and substance containing methamphetamine). (See Docket No. 29.)[1] The plea agreement signed by Petitioner reflects his understanding that the maximum penalty that could be imposed at sentencing included a thirty-year term of imprisonment and a fine of $2,000,000. (Plea Agreement ¶ 1, Docket No. 28.)

Prior to accepting Petitioner's guilty plea, this Court inquired as to his mental health and competency. Both Petitioner and his counsel, John Molloy, stated that there were no competency issues:

---

[1] Unless otherwise noted, all docket numbers refer to 10-CR-144S.

1

| | |
|---|---|
| The Court: | Do you take any medications, prescription or nonprescription? |
| Petitioner: | I take a bipolar medication and blood pressure. |
| The Court: | That's a prescription drug that's been prescribed for you by a psychiatrist? |
| Petitioner: | Yes, your Honor. |
| The Court: | All right. So you've undergone treatment and evaluation for a bipolar condition and other mental health conditions? |
| Petitioner: | Yes, your Honor. |
| The Court: | Okay. Any difficulty, any red flags here, Mr. Molloy, in terms of Mr. Knight's soundness of mind to proceed forward on this plea today? |
| Mr. Molloy: | No, your Honor. |
| The Court: | Any competency issues? |
| Mr. Molloy: | Not at all. |
| The Court: | Any plea that you feel would be entered today would be knowing and intelligently entered? |
| Mr. Molloy: | Yes, your Honor. |
| The Court: | Okay. Are you comfortable with your understanding of this whole proceeding that's involved here today based on your medication and health and mental health history— |
| Petitioner: | Yes, your Honor. |

(Plea Tr. at 8-9, Docket No. 55.)  Based on these representations, as well as observation of Petitioner's behavior and aspect, this Court found Petitioner competent to enter a plea of guilty.

By entering into the plea agreement Petitioner "knowingly waive[d] the right to appeal and collaterally attack any component of a sentence imposed by the Court which

2

falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12, . . . notwithstanding the manner in which the Court determines the sentence." (Id. ¶ 21.)  Petitioner further understood "that by agreeing to not collaterally attack the sentence, [Petitioner] is waiving the right to challenge the sentence in the event that in the future [Petitioner] becomes aware of previously unknown facts or a change in the law which the [Petitioner] believes would justify a decrease in [his] sentence." (Id. ¶ 22.)

Petitioner was sentenced on January 10, 2011 to a term of incarceration of 188 months, supervised release of six years, and no fines. (Docket No. 41.) The incarceration sentence was within the guideline sentencing range set forth in the plea agreement of 188 to 235 months; the term of supervised release was also within the range set forth in the plea agreement. (Plea Agreement ¶ 11.)  During his sentencing, Petitioner made a statement acknowledging that he knew his actions were wrong:

> First, your Honor, I'd like to apologize to you and to society for what I've done.  You know, I know what I've done is wrong.  I'm an old man now, and I should have known better than to do it.  But I grew up with the drug, and being addicted to it and addicted to chemistry itself, I kept manufacturing.  And for that I'm truly sorry.  I am.  I can't—I couldn't break the chain.  There's just—it was in me where I couldn't do it.  And I'm just truly sorry that I couldn't break the chain.

(Sentencing Tr. at 6, Docket No. 54.)  Neither Petitioner nor his counsel brought up his mental health at Sentencing, although his self-reported history of mental illness is discussed in the Presentence Investigation Report. (Docket No. 42 ¶ 71.)

Petitioner did not file an appeal, and the instant § 2255 motion was filed on December 8, 2014. (Docket No. 52.)  Together with the § 2255 motion, Petitioner submits certain records related to his mental health treatment between 2003 and 2009.

3

Petitioner asserts that these reports summarize his mental illness as "Major Depressive Disorder Recurrent Severe with Psychotic Features." (Id. at 2.) Petitioner does not argue that he was not mentally competent to enter a plea, but he does argue that he is actually innocent of the crime to which he pled guilty because he was insane at the time of its commission. He further argues that his counsel, Mr. Molloy, was ineffective because he failed to investigate and pursue an insanity defense.

### III. DISCUSSION

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the constitutionality of their sentences. That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)). Petitioner bears the burden of proving such a fundamental defect by preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)).

A court must construe a *pro se* litigant's submissions liberally and interpret such

4

submissions "to raise the strongest arguments that they suggest." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (internal citation and quotation marks omitted). This principle applies to *pro se* litigants moving pursuant to 28 U.S.C. § 2255. See Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001). Still, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks omitted).

1. Timeliness

Motions made pursuant to § 2255 are subject to "[a] 1-year period of limitation" that runs from the latest of, *inter alia*, "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). Under Rule 4 of the Federal Rules of Appellate Procedure, "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal." Fed. R. App. P. 4(b)(1)(A). A judgment or order is entered under this rule when it is entered on the docket. Fed. R. App. P. 4(b)(6).

Here, Petitioner's judgment of conviction was entered on January 18, 2011. (See Docket No. 44.) Accounting for the fourteen-day period to appeal and the one-year statute of limitations, Petitioner's deadline for filing his § 2255 motion was February 1, 2012. He filed the instant motion on December 8, 2014, nearly three years after that deadline. Because the Motion was not brought within one year of the date the judgment of conviction became final, it is not timely under § 2255(f)(1).

5

With respect to Petitioner's argument that he is "actually innocent" of the crimes to which he pled guilty and that the statute of limitations is therefore inapplicable, his argument is unpersuasive for the reasons set forth below. With respect to Petitioner's argument that his counsel was ineffective, the Second Circuit has instructed that a court should not ordinarily dismiss a § 2255 motion without notice and an opportunity for the movant to be heard. See Acosta v. Artuz, 221 F.3d 117, 124-26 (2d Cir. 2000). Accordingly, although the motion is untimely by nearly three years, this Court also considers and dismisses Petitioner's claims on the merits.

2. Actual Innocence

Habeas petitioners asserting a claim of actual innocence will not be automatically time-barred if they file after the one-year limitations period has run. McQuiggin v. Perkins, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013). Under this exception "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." Id. at 1931. This is a "demanding" standard which requires that the petitioner present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." Id. at 1936 (citation omitted). This exception "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." Id. at 1933 (internal quotation and citation omitted). Furthermore, a petitioner's "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." Id. at 1935.

In this case, Petitioner claims he is actually innocent because he was legally

insane when he committed the offense. The Insanity Defense Reform Act of 1984 ("IDRA"), 18 U.S.C. § 17, established a uniform standard for the insanity defense in all federal prosecutions, as follows:

> (a) Affirmative defense.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
> (b) Burden of proof.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

18 U.S.C. § 17; see United States v. Garcia, 94 F.3d 57, 61 (2d Cir. 1996); United States v. Brown, 899 F.2d 189, 191 (2d Cir. 1990). A criminal defendant who seeks to prove he was legally incapable (e.g. lacked the capacity) of forming the intent required to commit the crime must therefore prove by clear and convincing evidence: "(1) that he had a severe mental disease or defect at the time of the offense, and (2) that as a result he had been unable to appreciate the nature and quality or the wrongfulness of his acts." United States v. Levin, No. 15 CR. 101 (KBF), 2016 WL 299031, at *8 (S.D.N.Y. Jan. 25, 2016).

This claim fails on the merits because Petitioner has not shown that it is more likely than not that, had he undergone additional psychiatric evaluation and made an insanity plea, that no reasonable juror would have convicted him. See Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995); Murden v. Artuz, 497 F.3d 178, 194 (2d Cir. 2007). The Supreme Court has stated that in order to support an actual innocence claim petitioners must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously

7

unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Id. at 324. Even assuming that Schlup is intended to apply in cases such as this one, Petitioner's medical records, which relate to a period prior to his crime and describe only general symptoms and diagnoses, fail to meet that standard.

First, Petitioner offers no rationale for having not presented these records and his claim of mental illness sooner. It is uncontested that Petitioner was competent at the plea hearing and pled guilty to the counts charged in the indictment. Throughout the proceeding, Petitioner was given ample opportunity to object, continue the proceeding, or inquire of his attorney. He discussed his competence and mental health with the Court during the plea colloquy, and assented under oath that he was "comfortable with [his] understanding of this whole proceeding . . . based on [his] medication and health and mental health history." (See Plea Transcript at 8-9, Docket No. 55.) He then heard the charges against him and the facts to be used against him, admitting all as true. He made his plea knowingly, willfully and intelligently. "[I]f [Petitioner] was competent to enter a plea, then he was certainly competent at the time of the plea to bring the issue of his alleged insanity to the attention of his attorney." See Moore v. United States, No. 2:13-CV-02818-STA, 2015 WL 3407228, at *5 (W.D. Tenn. May 26, 2015).

Second, regardless of Petitioner's history of mental illness, Petitioner was not likely to succeed with an insanity defense, because Petitioner's words and actions demonstrate that Petitioner was fully able "to appreciate the nature and quality or the wrongfulness of his acts," and, therefore, Petitioner would have been unable to satisfy the requirements of an insanity defense. 18 U.S.C. § 17. During the commission of his crime, Petitioner took steps to hide his wrongful actions, including having an undercover

agent purchase cold pills, telling the undercover agent to discard the pill boxes and receipts, and using code words for drugs to escape detection. (Plea Agreement ¶ 7.) Moreover, Petitioner acknowledged his appreciation of the nature of his crimes at sentencing, stating before this Court: "I know what I've done is wrong. I'm an old man now, and I should have known better than to do it." (Sentencing Tr. at 6.)

Petitioner failed to provide new reliable evidence of his innocence, and the evidence provided is contradicted by Petitioner's contemporaneous statements and actions. For these reasons, the claim of actual innocence fails.

3. Ineffective Assistance of Counsel

Petitioner further argues that his counsel was ineffective for failing to pursue an insanity defense. As part of his plea agreement, Petitioner "knowingly waive[d] the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the [agreed] sentencing range." (Plea Agreement ¶ 19.) It is by now well established that a knowing and voluntary waiver made as part of a plea agreement is generally enforceable. United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "An enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005). Here, Petitioner's sentence for imprisonment fell within the 188 to 235 months agreed guideline range, rendering the waiver enforceable.

"However, a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d

Cir. 2002), *cert. denied*, 537 U.S. 1146 (2003).  Indeed, waivers may be set aside where "defendant is challenging the constitutionality of the process by which he waived those rights," including when "the defendant claims that the plea agreement was entered into without effective assistance of counsel."  Hernandez, 242 F.3d at 113-14.  To provide effective assistance of counsel, "defense counsel 'must give the client the benefit of counsel's professional advice on this crucial decision' of whether to plead guilty."  Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000) (quoting Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996)).

This Court must consider then whether Petitioner states "a 'meritorious' claim that 'the waiver was the result of ineffective assistance of counsel.'"  Brown v. United States, 637 F. Supp. 2d 212, 217 (S.D.N.Y. 2009) (quoting United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)).  Such a claim requires that Petitioner demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that this deficiency in performance affected the outcome of the plea process.  Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); see Strickland v. Washington, 466 U.S. 668, 687-688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).  This Court must reject Petitioner's ineffective assistance of counsel claim if it fails to meet either prong.  Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (citing Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011) and Strickland, 466 U.S. at 687).  Further, there is a strong presumption that a trial counsel's conduct falls within the range of reasonable professional assistance and, absent the complete lack of tactical justification, courts will generally not second-guess strategic decisions.  United States v. Cohen, 427 F.3d 164, 170-71 (2d Cir. 2005).

Here, Petitioner's claim of ineffective assistance of counsel contradicts the sworn statements he made at his plea allocution. Throughout the plea colloquy, in which the Court directed several questions to the Petitioner, he never raised the issue of insanity. Instead, Petitioner proceeded confidently with his guilty plea, assenting that he was "comfortable with [his] understanding of this whole proceeding . . . based on [his] medication and health and mental health history." (See Plea Tr. at 9.) A court can reject bald accusations of ineffective assistance of counsel that contradict a § 2255 petitioner's sworn statements at the plea allocution. See Brown, 637 F. Supp. 2d at 223-24 (denying § 2255 motion because "[petitioner]'s statements at his plea allocution control over his current, conclusory statements that counsel was ineffective"). And, as discussed above, Petitioner does not challenge his competency during the plea allocution, only during the commitment of the crime. During the allocution, the Petitioner stated that he was on medicine prescribed by a psychiatrist to control his bipolar disorder. (See Plea Tr. at 8.) This Court inquired during the allocution whether there were competence issues and, based on that inquiry, including the sworn statement of Petitioner and representations of his counsel that there were no "red flags . . . in terms of [Petitioner]'s soundness of mind," this Court found that Petitioner was competent to plead guilty. (Id. at 8-9.) Nor does Petitioner state that he requested that an insanity defense be pursued prior to making his guilty plea. If Petitioner was competent to enter a plea, then he was competent at the time of the plea to bring the issue of his alleged insanity to the attention of his attorney. Moreover, without any evidence to support a successful prosecution of an insanity defense, Petitioner cannot establish that counsel was deficient for failing to investigate and pursue that route. Accordingly, Petitioner has

not provided any facts showing that his counsel rendered ineffective assistance on this basis.

## IV. CONCLUSION

For the reasons stated above, this Court finds that petitioner has demonstrated no basis for relief under 28 U.S.C. § 2255. Accordingly, Petitioner's Motion to Vacate, Set Aside or Correct his Sentence is denied in its entirety. Furthermore, for the reasons set forth above, this Court concludes that the Petitioner has failed to make a substantial showing of the denial of a constitutional right, and therefore a certificate of appealability shall not be issued. See 28 U.S.C. § 2253(c)(1)-(2).

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 52) is DENIED.

FURTHER, that a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is DENIED.

FURTHER, it is hereby certified that any appeal taken in forma pauperis would not be taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3).

FURTHER, that the Clerk of the Court is directed to close 14-CV-1037S.

SO ORDERED.

Dated: January 9, 2017
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge